**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE LABORERS'<br>LOCAL 310 PENSION FUND, | : | Case No. 1:06cv1925 |
| | : | |
| Plaintiffs, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| ABLE CONTRACTING GROUP, INC., | : | **ORDER** |
| | : | |
| Defendant. | : | |

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001, *et seq.* Plaintiffs, Trustees of the Laborers' Local 310 Pension Fund ("Plaintiffs" or "the Fund"), seek, *inter alia*, payments from Defendant Able Contracting Group, Inc. ("Able") allegedly owed for Able's withdrawal from the Fund's multiemployer pension plan. Plaintiffs filed the complaint in this action on August 11, 2006. Thereafter, on September 21, 2006, Able filed a demand for arbitration with the American Arbitration Association ("AAA"), ostensibly under 29 U.S.C. § 1401(a)(1). Plaintiffs then filed the present Motion to Stay Arbitration (Doc. 11), arguing that Able's initiation of arbitration was untimely. Able has filed a brief in opposition (Doc. 13). For the reasons articulated below, the Court **GRANTS** Plaintiffs' motion and **STAYS** arbitration in this matter.

**I.     LAW**

In 1980, Congress amended ERISA by enacting the MPPAA, which requires "employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits." *Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 852 F.2d 156, 158 (6th Cir. 1988). In the event of such a withdrawal, the MPPAA provides that a plan sponsor shall notify the employer of the amount of liability and the schedule for liability payments. 29 U.S.C. § 1399(b)(1). No later than ninety (90) days after receiving that notification, the employer has the right to ask the plan sponsor to review any specific matter relating to the determination of the liability amount, identify any inaccuracy in the determination of the amount, and furnish any additional relevant information to the plan sponsor. 29 U.S.C. § 1399(b)(2)(A). If the employer requests a review, the plan sponsor shall then notify the employer of the plan sponsor's decision after that review, the basis for that decision, and the reason for any change in the liability determination. 29 U.S.C. § 1399(b)(2)(B).

Following that process, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination [of withdrawal liability] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1); *see Mason and Dixon*, 852 F.2d at 160 ("If either party disputes that outcome [of the notification, review, re-notification process], 29 U.S.C. § 1401(a)(1) comes into play." The MPPA provides the timeframes in which the parties must initiate an arbitration proceeding:

> (a)(1)  . . . Either party may initiate the arbitration proceeding within a 60-day period after the earlier of - -
>
>> (A) the date of the notification to the employer under section 1399(b)(2)(B) of this title, or
>>
>> (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

2

29 U.S.C. § 1401(a)(1). The statute also provides that,

> If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(b)(1).

## II. ANALYSIS

The issue before the Court is a narrow one. As Able concedes, "[f]or purposes of the present motion, the sole issue is whether Able initiated arbitration on a timely basis under MPPAA. Plaintiffs contend that Able did not. Able maintains that it did." (Def. Opp., Doc. 13 at p. 7). At least for purposes of this motion, Able does not dispute that it is an "employer" for purposes of ERISA and the MPPAA, and it does not dispute that it withdrew from a multiemployer plan within the meaning of those statutes. In addition, there is no disagreement as to the few facts upon which the Court must decide Plaintiffs' Motion to Stay Arbitration.

On April 26, 2006, Plaintiffs sent Able notice, pursuant to 29 U.S.C. § 1399(b)(1), that Able's withdrawal liability was $228,546, that Able should make the payment in eighty (80) installments of $5,383 each, and that the first payment was due within sixty (60) days of the date of the letter, making the first payment due on June 26, 2006. Able does not deny that it received the notice. Rather than either making the first payment within sixty days or exercising its rights under the MPPAA to seek review of the determination of its liability amount within ninety days, Able did nothing. On August 11, 2006, over ninety days after sending their notice, Plaintiffs filed a complaint in this Court seeking to collect the withdrawal liability amount from Able. Two weeks later, Able sent Plaintiffs a letter acknowledging that it received the notice and attaching a check for the first payment, made under protest. Able also demanded in its letter that it be provided with all the information upon which

3

Plaintiffs determined Able's withdrawal liability. On September 5, 2006, Able filed an answer and counterclaim seeking a declaration that Able was not liable for the withdrawal liability. On September 21, 2006, Able filed a demand for arbitration with the AAA.

There are two issues this Court must address to determine whether it should stay arbitration: (1) whether Able's initiation of arbitration was timely, and (2) whether that question, in the first instance, is appropriately decided by a court or by an arbitrator.

### A. Initiation of Arbitration

Plaintiffs argue that, based on the clear provisions of the MPPAA, Able failed to timely initiate arbitration and, therefore, Able does not have a right to have this dispute arbitrated. In response, Able makes a series of uncompelling arguments based on misinterpretations (and, frankly, mischaracterizations) of the relevant statutes.[1] Because Able's initiation of arbitration, which occurred almost 150 days after it received notice of amount of its withdrawal liability, was clearly outside the time limits prescribed in 29 U.S.C. § 1401(a)(1), and because Able offers no basis to overlook its obvious delinquency, the Court must conclude that Able's initiation of arbitration was untimely.

Able first argues that, as a prerequisite to Plaintiffs sending their notice, Plaintiffs were "required" to request information from Able in order to determine Able's withdrawal liability. Able bases this argument on 29 U.S.C. § 1399(a), which provides that,

> An employer, shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of this part.

Able's reading of the plain language of the statute is erroneous, and Able cites no case law to support its interpretation. The section upon which Able relies grants a <u>right</u> to Plaintiffs and imposes an

---

[1] The types of unreasonable positions that Able advances in its opposition brief also form part of the basis for a motion for sanctions filed by these same Plaintiffs against Able in a related matter, Case No. 1:04cv2294 (Doc. 50).

4

obligation on Able; it does not require Plaintiffs to do anything and is not a prerequisite to a plan sponsor submitting notice of liability. Able's argument, therefore, is unpersuasive.

Next, Able argues that Plaintiffs are barred from invoking their rights under the MPPAA because Plaintiffs' notice did not mention that Able had the right to request review of Plaintiffs' withdrawal liability calculations. Able argues that other funds "routinely mention" such rights, but once again, does not cite any law for the proposition that such information is required for a plan sponsor to collect an amount due from a withdrawing employer. Able attempts to convert a right granted to it by statute - the right to request a review of Plaintiffs' determination - into an obligation imposed on Plaintiffs. The statute cannot be read that way and, absent case law supporting such an interpretation, this Court will not adopt Able's interpretation. Able's argument, therefore, is without merit.

Finally, Able argues that Plaintiffs are required, by statute, to give Able written notice of its failure to make a payment and allow Able sixty days to cure the failure before seeking to collect. Able bases this argument on the section of the statute governing default procedures, which provides that:

> (5) In the event of default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means --
>
> > (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure . . .

29 U.S.C. § 1399(c)(5). Able contends that, because it never received notice that it failed to make the first payment, it still has sixty days to cure that failure and cannot have been untimely in initiating arbitration. Able's argument, however, misses the point. The provisions for default and the provisions for initiating arbitration are unrelated. Like the other provisions cited by Able, this default provision grants Plaintiffs an additional right - the right to <u>immediate</u> payment of the <u>outstanding</u> withdrawal

5

liability in the event an employer is in default. In other words, an employer's default accelerates the payment schedule. This section does not create another prerequisite to enforcement of Plaintiffs' rights which, under the plain language of the statute, already permit Plaintiffs to collect the amount owed pursuant to the payment schedule included in the notice.[2] Able contends that Plaintiffs, in this lawsuit, claim that <u>all</u> $238,546 of the withdrawal liability assessment is due and owing. (Def. Opp., Doc. 13 at p. 3) (emphasis added). That is not what Plaintiffs request. Plaintiffs seek immediate payment only of the past due liability payments and an injunction requiring timely future payments pursuant to the payment schedule set forth in Plaintiffs' notice of withdrawal liability assessment. Able's argument as to this point, therefore, must fail.

      **B.**      **Question for Court or Arbitrator**

Able also argues that the timeliness of their demand for arbitration is a question to be decided by the arbitrator, not by this Court. In support of this argument, Able relies primarily on the proposition espoused by the Sixth Circuit in *Mason and Dixon* that "questions of statutory construction, standing alone, are not exempt from arbitration under the MPPAA." *Mason and Dixon*, 852 F.2d at 164. This Court, of course, does not question that proposition. It finds, however, that it does not support Able's argument, and the Court concludes that the question of whether Able timely initiated arbitration is one for this Court to decide, not the arbitrator.

First, Able misapplies *Mason and Dixon*. In that case, the Sixth Circuit recognized the departure by many circuits from the view that arbitrators were not limited to deciding only factual disputes, but could also decide legal issues, including issues of purely statutory construction. *Id*. at 164. That older

---

[2] As mentioned *infra*, 29 U.S.C. § 1401(b)(1) provides that, "[i]f no arbitration proceeding has been initiated . . . the amounts demanded . . shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection."

6

view was premised on the idea that "administrative agencies are constituted for their factual, not legal expertise." *McDonald v. Centra,* U.S. Dist. LEXIS 111369 (D. Md. 1990). The departure from that view, the Sixth Circuit noted, was premised on the principal that, under the MPPAA, "arbitration reigns supreme." *Mason and Dixon* at 164 (citations omitted). This unremarkable proposition, however, does not support Able's argument. The language cited by Able does not support an assertion that <u>all</u> questions of statutory construction are to be decided by an arbitrator, only that a question of statutory interpretation should not be exempt from arbitration simply because it is a question of pure statutory construction.

Certainly, a question of statutory construction that is not intended by statute to be resolved by arbitration in the first instance is not left to an arbitrator merely because it is one of pure statutory construction. 29 U.S.C. § 1401(a) provides that "[a]ny dispute between an employer and the plan sponsor of multiemployer plan <u>concerning a determination made under sections 1381 through 1399 of this title</u> shall be resolved through arbitration." (Emphasis added). The statutory time limits for arbitration do not appear under sections 1381 through 1399 and, therefore, are not required to be resolved by arbitration. Other courts have made similar findings, and, while it is true that some of the cases cited by Plaintiffs still follow the older rule that questions of pure statutory construction are exempt from arbitration, their holdings are not upset or diminished by *Mason and Dixon*. For example, the Third Circuit in *Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 16 F.3d 1386, 1391, n. 4 (3d Cir. 1994) explained similarly that "[t]he MPPAA prescribes arbitration only for a dispute 'concerning a determination made under sections 1381 through 1399 [of Title 29],' and the statutory time limits for arbitration do not appear in these sections." That reasoning is unrelated to the issue of whether arbitrators may decide questions of statutory interpretation, and, therefore, is no less applicable to this case because of the Sixth Circuit's view that questions of pure statutory construction

7

are not exempt from arbitration.

Although under the MPPAA "arbitration reigns supreme" and is the "preferred method of dispute resolution," *Mason and Dixon*, 852 F.2d at 163, the question before this Court is simply not a question encompassed by the section of the MPPAA directing parties to resolve disputes through arbitration. The sole issue before this Court relates not to a dispute as to the amount or calculation of Able's withdrawal liability, matters which 29 U.S.C. § 1401(a)(1) covers, it relates only to whether Able complied with the relevant timeframes for initiating arbitration. The section that provides for those timeframes is not a section listed in 29 U.S.C. § 1401(a)(1) as a section under which disputes must be resolved by arbitration. In addition, there are no disputed facts that must be resolved to answer the single issue before the Court, and there is no specialized or complex area of the law that must be applied. The Court concludes, therefore, that it is the appropriate body to decide the issue raised in Plaintiffs' Motion to Stay Arbitration. In deciding that question, the Court easily concludes that Able's initiation of arbitration is untimely and that arbitration in the matter must be stayed.

### III. CONCLUSION

For the reasons outlined above, Plaintiffs' Motion to Stay Arbitration is **GRANTED**. The arbitration initiated by Able to address the withdrawal liability calculation are hereby **STAYED**.

**IT IS SO ORDERED.**

                                                s/Kathleen M. O'Malley
                                                **KATHLEEN McDONALD O'MALLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**Dated: October 23, 2006**