**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE LABORERS'** | : | **Case No. 1:06cv1925** |
| **LOCAL 310 PENSION FUND,** | : | |
| | : | |
| **Plaintiffs,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **ABLE CONTRACTING GROUP, INC.,** | : | <u>**ORDER**</u> |
| | : | |
| **Defendant.** | : | |
| | : | |

Before the Court is a *Motion to Dismiss Counterclaim* (Doc. 9) filed by Plaintiffs, Trustees

of the Laborers' Local 310 Pension Fund ("Plaintiffs" or "the Fund").  Plaintiffs seek to dismiss all

four counts of the Counterclaim asserted by Defendant Able Contracting Group, Inc. ("Able").  This

matter has been fully briefed and is ripe for adjudication.  For the reasons stated in this Order, the

Court **GRANTS** Plaintiffs' Motion to Dismiss and **DISMISSES** Able's Counterclaim in its entirety.

**I.      BACKGROUND**

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"),

as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C.

§§ 1001, *et seq.*  Plaintiffs seek, *inter alia*, payments from Able allegedly owed for Able's

withdrawal from the Fund's multiemployer pension plan.  Plaintiffs filed the Complaint in this action

on August 11, 2006, alleging that Able withdrew from its plan and failed either to make withdrawal

liability payments to the Fund or to timely initiate arbitration under 29 U.S.C. § 1401.  Consequently,

Plaintiffs argue that the amount of withdrawal liability demanded by the Fund is due and owing.  In addition, they seek interest, attorneys fees, costs, and a mandatory injunction and declaration that Able is ordered to pay all future liability payments on a timely basis.

On September 5, 2006, Able filed an answer largely denying the allegations of the Complaint, but admitting that it terminated its Collective Bargaining Agreement ("CBA") with Building Laborers Local Union No. 310 ("Local 310"), which is the termination on which Plaintiffs base their allegations of withdrawal liability.  (Doc. 7, Answer at ¶ 11.)  In addition, Able asserts a Counterclaim containing four counts.  In its Counterclaim, Able alleges that it was a party to two CBAs with Local 310, covering the periods 1997-2001 and 2001-2005.  (Doc. 7, Counterclaim at ¶ 3.)  Able alleges that, on May 1, 2005, it terminated its CBA with Local 310 because the work scope specified by the agreement did not cover fence or guardrail construction, which is the type of work Able performs.  (*Id.* at ¶ 5.)  Able further alleges that, "[o]n April 26, 2006, Trustees sent a letter to Donna Richards, Able's President, alleging that Able owes Trustees withdrawal liability in the amount of $228,546 and demanding payment in the amount of $5,383 within 60 days of the date of the April 26, 2006 letter." (*Id.* at ¶ 7.)  Able alleges that the Fund did not request any information from Able to calculate withdrawal liability, and it did not inform Able that Able had the right to request review of the liability assessment or the right to initiate arbitration.  (*Id.* at ¶¶ 6, 8.)  In addition, Able alleges that, on August 24, 2006, Able sent a check for the first liability payment, under protest, and requested information from the Fund related to its computation of withdrawal liability, which the Fund never produced.  (*Id.* at ¶¶ 10-11.)

Able asserts four counts in its Counterclaim.  In Count One, Able asserts that it has no withdrawal liability "because none of the Local 310 collective bargaining agreements to which Able

was a signatory cover fence or guardrail work," and, thus, Able is not an "employer" for withdrawal liability purposes. In Count Two, Able asserts that it falls within an exemption for withdrawal liability contained in 29 U.S.C. § 1383(b) because it did not perform work of the type covered by the CBA. In Count Three, Able alleges that the Fund is barred from seeking withdrawal liability because it did not comply with ERISA's withdrawal liability notice requirements. Finally, in Count Four, Able alleges that the Fund is barred from seeking withdrawal liability because the Fund failed to produce information in response to Able's request pursuant to 29 U.S.C. § 1401(e).

After filing its Answer and Counterclaim, Able filed a demand for arbitration with the American Arbitration Association on September 21, 2006. Thereafter, Plaintiffs filed a motion stay the arbitration and a separate motion to dismiss Able's Counterclaim. (Docs. 9, 11.) The Court granted Plaintiffs' motion to stay arbitration, finding that the Court, rather than the arbitrator, was the appropriate forum to decide the timeliness of Able's initiation of arbitration, and that Able's initiation was untimely under 29 U.S.C. § 1401(a)(1). (*See* Doc. 14). Able appealed the Court's order staying arbitration, and the Sixth Circuit dismissed the appeal for lack of jurisdiction, though it agreed that a court, not an arbitrator, determines the timeliness of a demand for arbitration. *Local 310 Trustees of the Bldg. Laborers Pension Fund v. Able Contracting Group, Inc.*, No. 06-4587 (6th Cir. Feb. 6, 2007) (order granting motion to dismiss for lack of jurisdiction).

In their motion to dismiss Able's Counterclaim, Plaintiffs argue primarily that Able's failure to timely initiate arbitration operates to waive the claims Able asserts in its Counterclaim. The Court now turns to that motion.

3

## II.    ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure12(b)(6), the Court may dismiss a claim for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself. *Roth Steel Products v. Sharon Steel Corp*., 705 F.2d 134, 155 (6th  Cir. 1983) (citing *Sims v. Mercy Hospital of Monore*, 451  F.2d 171, 173 (6th Cir. 1971)). When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B.    Discussion

In its opposition brief, Able does not dispute the general principle that an employer waives any claims that are subject to arbitration under the MPPAA when it fails to timely invoke arbitration. Instead, it argues that its particular claims are not subject to arbitration, and, therefore, that they cannot have been waived when Able failed to timely initiate arbitration.  After due consideration, the Court concludes that Able's arguments are not well-taken.  Specifically, the Court finds that Able has waived the claims in Count One and Count Two of Able's Counterclaim by its failure to initiate arbitration, and further finds that Counts Three and Four fail to state a claim upon which relief can be granted.

A brief overview of the relevant statutory scheme is helpful to put these issues in context.

4

In 1980, Congress amended ERISA by enacting the MPPAA, which requires "employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits."  *Mason & Dixon Tank Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 852 F.2d 156, 158 (6th Cir. 1988).  In the event of such a withdrawal, the MPPAA provides that a plan sponsor shall notify the employer of the amount of liability and the schedule for liability payments.  29 U.S.C. § 1399(b)(1).  No later than ninety (90) days after receiving that notification, the employer has the right to ask the plan sponsor to review any specific matter relating to the determination of the liability amount, identify any inaccuracy in the determination of the amount, and furnish any additional relevant information to the plan sponsor.  29 U.S.C. § 1399(b)(2)(A).  If the employer requests a review, the plan sponsor shall then notify the employer of the plan sponsor's decision after that review, the basis for that decision, and the reason for any change in the liability determination.  29 U.S.C. § 1399(b)(2)(B).

Following that process, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination under sections 1381 through 1399 of this title shall be resolved through arbitration."  29 U.S.C. § 1401(a)(1); *see Mason & Dixon*, 852 F.2d at 160 ("If either party disputes that outcome [of the notification, review, re-notification process], 29 U.S.C. § 1401(a)(1) comes into play.")  The MPPA provides timeframes in which parties must initiate an arbitration proceeding, the applicable timeframe in this case being sixty days after Plaintiffs sent the notification of withdrawal liability.  *See* 29 U.S.C. § 1401(a)(1)(A). Significantly, the statute also provides that,

> If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor.  The plan

5

sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(b)(1) (emphasis added).

This Court has already found that Able's initiation of arbitration in this case was untimely because Able waited almost 150 days after it received Plaintiffs' withdrawal liability notice (which was after Plaintiffs filed this lawsuit) to initiate arbitration, well beyond the sixty days within which it was required to do so. (*See* Doc. 14.) As quoted above, § 1401(a)(1) unambiguously provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added); *see also Mason & Dixon*, 852 F.2d at 160 (quoting same with same emphasis). Failure to initiate arbitration on claims that are subject to arbitration generally results in a waiver of those claims unless some exception to the arbitration requirement applies. *See Mason & Dixon*, 852 F.2d at 163 ("[Arbitration] is the preferred method of dispute resolution under the MPPAA, and normally the initial step preceding judicial intervention) (quotations omitted); *Central States, Southeast & Southwest Areas Pension Fund v. Rogers*, 843 F.Supp. 1135, 1144 (E.D. Mich. 1992) ("[I]n order to preserve for judicial review defenses concerning disputes under 29 U.S.C. §§ 1381-1399, those defenses must have been first raised in arbitration, or they are waived unless some exception to the exhaustion of administrative remedies applies."); *see also Chicago Truck Drivers, Helpers & Warehouse Union Pension Fund v. Century Motor Freight*, 125 F.3d 526, 529 (7th Cir. 1997) ("If the employer does not timely initiate the arbitration process to resolve a dispute over a plan's determination of withdrawal liability, the employer waives the right to contest the assessment and the amounts demanded by the plan become

'due and owing' and the plan can sue to collect it.").

The issue before the Court is whether the counts Able asserts in its Counterclaim are defenses that were subject to arbitration (i.e., they concerned disputes under 29 U.S.C. §§ 1381-1399), and, if so, whether they fall within an exception to the arbitration requirement.  The Court addresses each count separately.

### 1.  Count One

Able asserts that, because the CBAs with Local 310 did not cover fence or guardrail work, Able is not an "employer" for purposes of the MPPA and, thus, has no withdrawal liability.  In support of this argument, Able points to the "narrow exception to the arbitration requirement" that "allows a company to bypass arbitration for the limited purpose of determining whether it is an 'employer' for purposes of section 1401(a)(1)."  *Mason & Dixon*, 852 F.2d at 167.  An overview of this exception  reveals why the exception does not apply in this case.

In *Mason and Dixon*, the Sixth Circuit referred to this "narrow exception" to describe an earlier decision in that case, in which it affirmed the district court's grant of summary judgment to a business on the ground that the business was not an "employer" for purposes of § 1401(a)(1).  *Id.* at 167.  In that case, a multiemployer pension plan sought withdrawal liability not only against a corporation that partially withdrew from its plan, but also against that corporation's parent company as well as a company that executed a stock purchase agreement to acquire the parent and the subsidiary.  *Id.* at 160-62.  In doing so, the plan relied on the common control provision, 29 U.S.C.

7

§ 1301(b)(1),[1] arguing that all the businesses were under common control and, thus, were all subject to withdrawal liability.  *Id.* at 161.  The district court decided, and the Sixth Circuit agreed, that the company that executed the stock purchase agreement was not an "employer" subject to withdrawal liability because it did not have actual or constructive ownership of the withdrawing subsidiary as of the date on which the subsidiary withdrew from the plan.  *Id.* at 162 (citing *Central Transport, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 640 F.Supp. 56 (E.D. Tenn. 1986)).  In explaining that it was appropriate for a court, rather than an arbitrator, to resolve that question, the Sixth Circuit referred to this "narrow exception," explaining that, "[s]ince only an 'employer' is required to arbitrate, the district court may address this threshold question before arbitration."  *Id.* at 167.

In referring to that exception, the Sixth Circuit cited four cases, all of which involved the question of whether one or more companies were "employers" that were subject to withdrawal liability for the withdrawal of <u>another</u> company.  *See Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1244-45 (3d Cir. 1987) (involving the question of whether a company was an "employer" that could be held liable for its former-subsidiary's withdrawal); *Banner Industries, Inc. v. Central States Southeast & Southwest Areas Pension Fund*, 657 F.Supp. 875, 876-77 (N.D. Ill. 1987) (involving the question of whether the company's restructuring of its ownership over its wholly-owned subsidiary before the subsidiary's withdrawal date removed its

---

[1]  29 U.S.C. § 1301(b)(1) provides, in relevant part, that, "[f]or purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26."

"employer" status);  *Tri-State Rubber & Equipment, Inc. v. Central States Southeast & Southwest Areas Pension Fund,* 661 F.Supp. 46, 47 (E.D. Mich. 1987) (involving the question of whether seven companies under the same ownership or control were subject to withdrawal liability under the common control provision, even though those companies were not a party to any agreement requiring contributions);  *Refined Sugars, Inc. v. Local 807 Labor-Management Pension Fund*, 580 F.Supp. 1457 (S.D.N.Y. 1986) (involving the question of whether a company that hired an independent trucking company was an "employer" subject to withdrawal liability for the trucking company's withdrawal), *subsequent opinion*, 632 F.Supp. 630 (S.D.N.Y. 1986).

Notably, the courts in two of the cases cited by the Sixth Circuit concluded that the question of "employer" status was subject to arbitration because the "employer" question encompassed a specific issue that clearly was arbitrable under the MPPAA.  *Flying Tiger*, 830 F.2d at 1247-48; *Banner,* 657 F.Supp. at 883.  In *Flying Tiger*, for example, a multiemployer pension plan argued that a company was subject to withdrawal liability for its former-subsidiary's withdrawal, contending that the company's sale of a subsidiary's assets was a sham transaction designed to avoid withdrawal liability within the meaning of the MPPAA's "evade or avoid" provision, 29 U.S.C. § 1392(c).[2] *Flying Tiger*, 830 F.2d at 1247-48.  The company alleged that it was not an "employer" because it sold its subsidiary's assets prior to the subsidiary's withdrawal, a defense, it argued, that was not subject to arbitration.  *Id.* at 1247.  The district court found, and the Third Circuit agreed, that "characterizing the issue to be decided as whether or not Tiger was an 'employer' is a broad brush

---

[2] 29 U.S.C. § 1392(c) provides that, "[i]f a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

description of a specific issue. The case really turns on the determination of the 'evade or avoid' question, a question properly before the arbitrator." *Id.* at 1248 (quoting the district court).

In addition, the court in *Banner*, with language quoted with approval both by the Third Circuit in *Flying Tiger*, 830 F.2d at 1250, and by a district court in this Circuit, *Rogers*, 843 F.Supp. at 1146 (E.D. Mich. 1992), offered an explanation for the distinction of when the question of "employer" status is for the court and when it is for the arbitrator. It explained:

> [T]he issue of whether one remains an employer on the date of a withdrawal is not the same issue as whether one ever became an "employer" for purposes of ERISA generally and MPPAA in particular. The latter is an issue for the court since its resolution determines the arbitrator's authority over the dispute. The former is an issue for the arbitrator since its resolution turns on the applicability of MPPAA provisions relating to employer withdrawals-provisions Congress specifically placed within the purview of the arbitrator.

*Banner*, 657 F.Supp. at 882.

Taking into account the narrow exception as described above that Able seeks to invoke, the Court concludes that Able's claim in Count One is a claim that Able was required to raise in arbitration. Having failed to timely initiate arbitration, Able has waived that claim, and it must be dismissed. There are several bases for that conclusion, explained below.

In the case at bar, as in *Flying Tiger*, "characterizing the issue to be decided as whether or not [Able] was an 'employer' is a broad brush description of a specific issue." *Flying Tiger*, 830 F.2d at 1248. According to Able, the issue of whether it is an "employer" turns on a determination of whether the CBAs covered the type of work Able performs, an issue that is particularly appropriate for an arbitrator to resolve. Essentially, Able asks the Court to compare the terms of the CBAs with a factual account of the type of work Able performs to determine if Able's work is covered by the CBAs. Although the precise subject of this dispute - whether a CBA to which an

10

employer is a signatory covers the work in which that employer engages - is not specifically governed by §§ 1381-1399 (disputes under which must be resolved through arbitration pursuant to § 1401(a)), one section, § 1383, involves a related subject.[3]  For purposes of determining when there has been complete withdrawal in the building and construction industry, § 1383 indicates that complete withdrawal occurs when the employer ceases to have contribution obligations and, among others, "continues to perform work in the jurisdiction of the collective bargaining agreement <u>of the type for which contributions were previously required</u>."  29 U.S.C. § 1383(b)(2)(B)(i) (emphasis added).  Disputes under this section, including whether the employer continues to perform work for which contributions were previously required (i.e., work that was covered by a collective bargaining agreement), must be resolved through arbitration.  *See* 29 U.S.C. § 1401(a)(1).  Likewise, Able's claim requires the Court to determine whether its work was covered by the CBAs to which it was a signatory, the same type of dispute under § 1383 that Congress directs to arbitration.  It follows that the dispute Able raises in Count One is also subject to arbitration.

Further, the circumstances of the present case clearly are different from facts of *Mason and Dixon* and the cases relied upon by the Sixth Circuit to describe the "narrow exception to the arbitration requirement" Able seeks to invoke here.  Significantly, Able admits that it is a signatory to CBAs covering the years 1997 - 2005, and that it terminated the CBA in effect with Local 310 in 2005.  Plaintiffs in this case are not seeking to impose liability on companies that were not

_____

[3]  It is not surprising that the subject of this dispute is not governed by §§ 1381-1399.  First, it is a rare situation in which an employer binds itself to a collective bargaining agreement that it believes does not even cover the type of work it performs.  Second, §§ 1381-1399 deal primarily with withdrawal liability procedures and calculations <u>after</u> an employer withdraws from a plan, and usually would not govern an employer's argument that, for the eight years prior to its withdrawal, it was not required to make contributions under the CBA to which it was a signatory and pursuant to which it made numerous contributions without complaint.

11

signatories to the CBAs, as in the cases cited above; they are asserting withdrawal liability against a company that was a party to two different CBAs for an eight year period and made contributions pursuant to the CBAs during that period.  That fact is significant.  *See Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 262 (2d Cir. 1990) ("Had [the defendant] actually signed the [General Cargo Agreement], there is no question that it would have been obligated to make tonnage assessment payments and would be considered an employer subject to withdrawal liability."); *cf. ILGWU Nat. Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 885-86 (2d Cir. 1988) ("It is not as though the Corporation can justifiably claim that it is a complete stranger to the Fund, with the claim against it coming out of the blue from an entity it never heard of or dealt with.").  Accordingly, this case is unlike the other cases in which courts have applied this exception.

Because Able was itself a signatory to two CBAs and made contributions for an eight year period, its claim in Count One is more closely related to a dispute as to whether it <u>remains</u> an "employer" for purposes of withdrawal liability, which is a dispute for an arbitrator to resolve, not whether it <u>ever became</u> an "employer," which would be a dispute for a court to resolve.  *See Banner*, 657 F.Supp. at 882.  Able contends that it became a signatory to the CBAs with Local 310 "to keep the peace" and because it is "the pawn in the never ending jurisdictional battle between two sister labor unions."  (Doc. 15 at 2, 9.)  Aside from the fact that these arguments are outside of the pleadings and not appropriately considered in this procedural context, it is of no moment whether Able believed that it was required to become a signatory to the CBAs or whether it believed it was doing so only for political reasons.  The undisputed fact is that Able was a signatory to the CBAs with Local 310, a fact that Able admits in its Answer and alleges in its Counterclaim.  Any later challenges to its continued obligations under the CBAs, including its liability on withdrawal, go to

12

whether Able remained an employer, not whether it ever became one.  As such, it cannot argue that

its claim that it is not an "employer" in this case is not subject to arbitration.

In sum, Able's assertions in Count One of its Counterclaim are assertions that were required

to be resolved through arbitration.  Having failed to timely initiate arbitration, those claims have

been waived, and Count One must be dismissed.[4]

### 2.    Count Two

In Count Two of its Counterclaim, Able alleges that it is exempt from withdrawal liability

under ERISA's building and construction industry exemption, 29 U.S.C. § 1383(b).  As discussed

above, this exemption provides that there is only complete withdrawal from a multiemployer pension

plan if an employer ceases to have contribution obligations and "continues to perform work in the

jurisdiction of the collective bargaining agreement of the type for which contributions were

previously required."  29 U.S.C. § 1383(b)(2)(B)(i).  Able argues, as it did in Count One, that the

type of work it performed was not covered by the CBA with Local 310, and, therefore, that it is

exempt from withdrawal liability under § 1383.  Although Able attempts to couch this argument as

an argument that it is not an "employer," this Count is subject to arbitration for the same reasons that

Count One is subject to arbitration.  Indeed, § 1383 falls squarely within the range of sections for

which any disputes must be resolved through arbitration.  *See* 29 U.S.C. § 1401(a)(1) ("Any dispute

between an employer and the plan sponsor of a multiemployer plan concerning a determination under

---

[4]  Because the Court concludes that Able was required to raise this claim in arbitration,
the Court does not address Plaintiffs' argument that Able should be judicially estopped from
arguing that it is not an "employer" because it admitted, in a separate action, that it is an
"employer" as that term is defined in Sections 3(5), (11), and (12) of ERISA, *see Trustees of the
Building Laborers Union Local 310 Pension Fund v. Able Contracting Group, Inc.*, Case No.
1:04cv2294 (N.D. Ohio), though that argument appears to carry substantial force.

sections 1381 through 1399 of this title shall be resolved through arbitration."). As such, the claim Able asserts in Count Two must have been resolved, if at all, through arbitration. Having failed to timely initiate arbitration, those claims have been waived, and Count Two must be dismissed.

### 3.    Count Three

In Count Three, Able asserts that Plaintiffs are barred from seeking to collect withdrawal liability because of their alleged failure to comply with ERISA's notice requirements. Able admits that Able's President received a letter from Plaintiffs indicating that Able owed Plaintiffs withdrawal liability, indicating the amount of withdrawal liability, and providing for a payment schedule. Able, nonetheless, contends that Plaintiffs did not comply with ERISA's notice requirements because they did not notify Able of its right to request review of the liability assessment, did not notify Able of its right to seek arbitration, and did not notify Able that it failed to make its first payment. In addition, Able also asserts that Plaintiffs' failure to follow ERISA's notice requirements violated Able's due process rights.

As an initial matter, this Court has already concluded that Able's initiation of arbitration was untimely, and, in doing so, already rejected many of Able's attacks on the adequacy of Plaintiffs' withdrawal liability notice. To avoid those prior conclusions, Able argues that those issues were not properly before the Court in connection with Plaintiffs' motion to stay arbitration, and that it expressly reserved briefing on those issues in its opposition to the present motion. Able contends that the Court "impose[d] unreasonable expectations" on Able's opposition to the motion to stay arbitration, because that opposition brief was not intended to address the adequacy of the notice. (Doc. 15 at 15 n.2.) Able contends that its attacks on the adequacy of Plaintiffs' notice were included "only as background information in the Statement of Facts section." (*Id.*)

Able's position that it did not intend to address that question is belied by its previous opposition brief.  For example, Able wrote in its opposition to Plaintiffs' motion to stay arbitration that, "[f]or purposes of the present motion, the sole issue is whether Able initiated arbitration on a timely basis under MPPAA.  Plaintiffs contend that Able did not.  Able maintains that it did." (Doc. 13 at 7.)  If the "sole issue" was the timeliness of Able's initiation of arbitration, and the event that triggers the time to initiate arbitration is the withdrawal notice required by 29 U.S.C. § 1399(b)(1), it seems obvious that Able should have raised any arguments about the inadequacy of that notice in connection with Plaintiffs' motion to stay arbitration.  Indeed, Able did raise those arguments.  In its opposition to Plaintiffs' motion to stay arbitration, Able stated that a plan is "required" to request information to determine withdrawal liability prior to sending its notice, and Plaintiffs' failure to request such information "violated their statutory obligations."  (Doc. 13 at 2-3.)  Able also stated that Plaintiffs "made a misstep that is fatal to their claims" in not informing Able that it missed its first payment, as Able believed Plaintiffs were required to do by statute.  (*Id.* at 3.)  While it is true that these statements appear in Able's "Statement of Facts" section of the brief, they clearly are written as legal arguments attacking the sufficiency of Plaintiffs' notice.  In addition, Able reiterated all of these arguments in the "Law and Argument" section of its brief.  (*Id.* at 9.)  Able's current position that it was not actually advancing those arguments in its earlier brief, therefore, is disingenuous.

Even if the Court allows Able to "supplement" its arguments regarding the adequacy of Plaintiffs' withdrawal liability notice, none of Able's arguments compel the Court to reach a different conclusion about the sufficiency of the notice.  The MPPAA provides that:

**(1)** As soon as practicable after an employer's complete or partial withdrawal, the

15

plan sponsor shall--

> **(A)** notify the employer of--
>> **(i)** the amount of the liability, and
>> **(ii)** the schedule for liability payments, and
> **(B)** demand payment in accordance with the schedule.

29 U.S.C. § 1399(b)(1).  In this case, Able admits that its president received a letter with allegations that it owed withdrawal liability, the amount of liability, and a demand for payment within sixty days.[5]  Able argues, however, that the Court should read into the statute a requirement that Plaintiffs must first request information to calculate withdrawal liability, a requirement that the notice indicate the basis of withdrawal liability, and a requirement that Plaintiffs inform Able of its rights to review the calculation and initiate arbitration.  Able has not presented convincing support for the Court to read those requirements into the unambiguous language of this statute, and the Court declines to do so.

First, Able points to the legislative history of the MPPAA, which, according to Able, supports its position that Plaintiffs were required to request information prior to calculating withdrawal liability.  The language of the statute is simple and unambiguous, however, and the Court sees no reason to look to the legislative history to add requirements beyond those listed in the

---

[5]  Able does not argue that the notice was not sent "as soon as practicable."

16

statute.[6]  *See Sherwin-Williams Co. v. United States*, 403 F.3d 793, 797 (6th Cir. 2005) ("Because the relevant Code provisions are unambiguous, however, there is no need to consult legislative history.").  In addition, Able does not cite to a single case in which a court has found a withdrawal liability notice defective for failure to request information from the employer prior to sending the notice.[7]  The Court, therefore, refuses to read into this section the requirement that Able urges.

Second, Able cites a case for the proposition that a plan's withdrawal liability notice must indicate the bases of withdrawal liability.  In *Flying Tiger Line, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 704 F.Supp. 1277, 1285 (D. Del. 1989), a pension fund sent a withdrawal liability notice to a withdrawing employer arguably asserting only one basis for withdrawal liability.  The issue was whether the plan was precluded from asserting alternative bases of liability beyond the one presented in the plan's notice of liability.  *Id.*  In that case, the court rejected the employer's reading of the statute that the plan should be so limited, and the court concluded that the plan sponsor would not be limited to asserting only the basis contained in the notice of withdrawal liability, but could also raise others.  *Id.*  Contrary to Able's suggestion, that case does not stand for the proposition that a plan <u>must</u> provide notice of the bases of liability.  At

---

[6]  Even if the Court considered the legislative history, it would not alter its conclusion. The House Report to which Able cites states that, "[a]fter an employer withdraws from a plan, the plan sponsor is to request in writing that the employer furnish such information as the plan sponsor reasonably considers necessary for it to fulfill its duties in computing and collecting withdrawal liability."  H.R. Rep. 96-869(II), at 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2993. According to that statement, the plan sponsor should request only such information as it "reasonably considers necessary" to compute withdrawal liability.  If a plan sponsor does not consider any information from the employer necessary to make its calculation, then it follows that no such request needs to be made.

[7]  It would seem particularly inappropriate to impose such a requirement in circumstances like those at issue here, where there is a long payment history by the employer to which a plan sponsor can turn for purposes of making its calculations.

17

most, it holds that, when a plan does indicate bases of liability, it is not precluded from later asserting other bases.  In the present case, Able's withdrawal liability arose when it took the action of terminating the CBA with Local 310.  Even if a plan is required to notify an employer as to the bases of its liability in some cases, there is little sense in imposing such a requirement in this case.  Here, the basis of liability is clear and is based on the employer's direct action - its termination of the CBA. Accordingly, the Court again declines to read such a requirement into the statute.

Finally, Able cites several cases in which pension plans apparently did notify employers of their rights to review the withdrawal liability calculation and seek arbitration.  (Doc. 15 at 17-18.) None of the cases stand for the proposition that a plan must include such a notification, and, once again, the Court declines to read that requirement into the statute.  Although Plaintiffs could have included this information in their notice, they were not required to do so.  Such notice seems especially unnecessary in this case, where there is no indication that Able was an unsophisticated party, that it lacked legal representation at the time, or that the notice of withdrawal liability was otherwise an unfair surprise.  Indeed, when Plaintiffs sent their notice, these parties were already in ongoing litigation concerning benefits contributions, litigation in which Able was (and still is) represented by the same counsel that represents it in the current case.  *See Trustees of the Building Laborers Union Local 310 Pension Fund v. Able Contracting Group, Inc.*, Case No. 1:04cv2294 (N.D. Ohio).

In short, the claim asserted in Count Three of Able's Counterclaim is based on requirements that are simply not present in the relevant sections of the MPPAA.  Plaintiffs' notice complied with the basic requirements set forth in 29 U.S.C. § 1399(b)(1), and there is no dispute that Able received the notice.  Accordingly, Count Three fails to state a claim on which relief can be granted.

18

4.      **Count Four**

In Count Four of its Counterclaim, Able argues that Plaintiffs are barred from seeking to

collect withdrawal liability because they failed to furnish information that Able requested pursuant

to 29 U.S.C. § 1401(e).  Able alleges in its Counterclaim that it sent a letter to Plaintiffs on August

24, 2006, requesting that Plaintiffs furnish information that served as the basis for Plaintiffs'

computation of withdrawal liability.  That letter was sent almost 120 days *after* Plaintiffs sent their

notice of withdrawal liability to Able, and *after* Plaintiffs initiated the present lawsuit.  Able alleges

that Plaintiffs have not provided any information requested in that letter.  In response, Plaintiffs

argue that § 1401(e) only gives an employer the right to request information <u>prior</u> to withdrawing

and, because Able withdrew before sending the letter, it cannot now seek to enforce its rights under

that section.

29 U.S.C. § 1401(e) provides:

(e) Furnishing of information by plan sponsor to employer respecting computation
of withdrawal liability of employer; fees

If any employer requests in writing that the plan sponsor make available to the
employer general information necessary for the employer to compute its withdrawal
liability with respect to the plan (other than information which is unique to that
employer), the plan sponsor shall furnish the information to the employer without
charge. If any employer requests in writing that the plan sponsor make an estimate
of such employer's potential withdrawal liability with respect to the plan or to provide
information unique to that employer, the plan sponsor may require the employer to
pay the reasonable cost of making such estimate or providing such information.

Neither the Supreme Court nor the Sixth Circuit has addressed the dispute of statutory

interpretation that is before the Court - i.e.,  whether § 1401(e) is limited only to pre-withdrawal

requests.  There are, however, conflicting lines of authority from district courts addressing this

question.  *Compare Reliable Liqours, Inc. v. Truck Drivers & Helpers Local Union No. 355 Pension*

19

*Fund*, 240 F.Supp.2d 450, 452 (D. Md. 2003) (holding that § 1401(e) does not apply where an employer has already withdrawn from a plan) *with Brach's Confections, Inc. v. McDougall*, 320 F.Supp.2d 726, 734 (N.D. Ill. 2004) (holding that § 1401(e) is not limited to the pre-withdrawal period) *and John J. Nissen Baking Co., Inc. v. New England Teamsters & Trucking Ind. Pension Fund*, 737 F.Supp. 679, 682 (D. Me. 1990) (holding that § 1401(e) applies after withdrawal has occurred).  Not surprisingly, Plaintiffs urge the Court to follow *Reliable Liquors*, and find that § 1401(e) only requires plans to furnish information if the request is made before withdrawal; and Able urges the Court to follow *Brach's* and *Nissen Baking*, and find that § 1401(e) is not limited to pre-withdrawal requests.

In the circumstances of this case, the Court need not side with either line of authority.  Even if the Court agrees with the statutory interpretation of *Brach's* and *Nissen Baking* and finds that  § 1401(e) is not limited to pre-withdrawal requests, that section still does not provide any rights to Able in this case.  In both *Brach's* and *Nissen Baking*, the employer had already withdrawn from the plan when it requested information under § 1401(e), but, unlike Able, the employer in those cases made its request before the time to seek review of the plan's liability calculation or the time to initiate arbitration had expired.  In both of those cases, the employer requested information in order to better assess and review the plan's calculation to respond to the notice within the statutory deadline.  *See Brach's*, 320 F.Supp.2d at 730; *Nissen Baking*, 737 F.Supp. at 680.  Indeed, *Nissen Baking* held that § 1401(e) "requires the provision of information <u>before</u> arbitration is initiated and <u>before</u> informal review is requested."  *Nissen Baking*, at 682 (emphasis added).  Unlike the employers in those cases, Able waited until well after the time for initiating arbitration or seeking informal review had expired to request information from the Plaintiffs.  Permitting Able to require

20

information from Plaintiffs at this point would not only be futile, because Able has already waived its right to challenge Plaintiffs' calculation, it would also be inconsistent with the dispute resolution scheme provided in the MPPAA.

Accordingly, the Court concludes that Able is not entitled to any information pursuant to § 1401(e) because it did not request the information until after the expiration of the time to seek informal review or initiate arbitration.  Because Able was not entitled to information under the statute, Plaintiffs' failure to provide that information does not bar their ability to collect withdrawal liability, and Able's claim in Count Four must be dismissed.[8]

### III.    CONCLUSION

For the reasons articulated in the opinion, Plaintiffs' *Motion to Dismiss Counterclaim* (Doc. 9) is **GRANTED**, and Able's Counterclaim is **DISMISSED** in its entirety.


**IT IS SO ORDERED.**

                                                    s/Kathleen M. O'Malley
                                                    **KATHLEEN McDONALD O'MALLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**Dated: August 1, 2007**

---

[8]  The Court also finds that, in the circumstances of this case, Able's due process rights have not been violated.  Significantly, Able admits that it received the notice, and that Able was already involved in litigation with Plaintiffs at the time the notice was received.

21