**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE BUILDING** | : | **Case No. 1:06 CV 1925** |
| **LABORERS' LOCAL 310 PENSION FUND,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| | : | |
| **ABLE CONTRACTING GROUP, INC.,** | : | <u>**ORDER**</u> |
| | : | |
| **Defendant.** | : | |

This case is before the Court on Plaintiff Trustees of the Building Laborers' Local 310 Pension Fund's *Motion for Judgment on the Pleadings* (ECF Doc. 22). This matter has been fully briefed and is ripe for adjudication. For the reasons articulated more fully below, Local 310's motion for judgment on the pleadings is **GRANTED**.

I.    <u>**BACKGROUND**</u>

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001 *et seq*. The Trustees of the Building Laborers' Local 310 Pension Fund ("the Trustees") administer a multiemployer pension plan as defined by ERISA. The Defendant, Able Contracting Group, Inc. ("Able"), is a fence and guardrail installation contractor. Able entered into a collective bargaining agreement with the Building Laborers' Local 310 ("Local 310") requiring Able to contribute to the Local 310 Pension Fund ("the Fund") on behalf of employees. On February 2, 2005, Able gave notice of termination of its collective bargaining agreement with Local 310.

In light of this termination, the Trustees sent Able a notice of "withdrawal liability" pursuant to ERISA and MPPAA on April 26, 2006.[1] The notice stated that Able's withdrawal liability was

_____

[1]    *See*, *infra* at § I(A).

$228,546, that Able should make the payment in eighty (80) installments of $5,383, and that the first installment was due within sixty (60) days.  Able received the notice and did nothing for over ninety (90) days.  On August 11, 2006, the Trustees filed this lawsuit to collect unpaid withdrawal liability from Able under ERISA and MPPAA.   Two weeks later, Able sent the Trustees a letter acknowledging receipt of the April 26th notice of withdrawal liability and including a check in the amount of the first payment, made under protest.

    **A.**    **Law**[2]

In 1980, Congress amended ERISA by enacting the MPPAA, which requires "employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits."  *Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 852 F.2d 156, 158 (6th Cir. 1988).  In the event of such a withdrawal, the MPPAA provides the procedure for the plan sponsor to pursue collection of the withdrawing employer's proportionate share at 29 U.S.C. § 1399.  Section 1399 provides, in pertinent part, as follows:

> (b) Notification, demand for payment, and review upon complete or partial withdrawal by employer
> > (1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall--
> > > (A) notify the employer of--
> > > > (i) the amount of the liability, and
> > > > (ii) the schedule for liability payments, and

---

[2]    The Court notes that it has already explained the law applicable to the Trustees' *Complaint* for withdrawal liability twice, first in its October 23, 2006, Order granting the Trustees' motion to stay arbitration, and second in its August 1, 2007, Order granting the Trustees' motion to dismiss Able's counterclaim.  Neither party substantially relies on new ERISA or MPPAA provisions in their briefs on the motion for judgment on the pleadings.  Nevertheless, because Able continues to doggedly assert that it timely initiated arbitration under an arguably new theory referencing the statutory framework applicable to withdrawal liability, and because one sentence of the Court's August 1st Order may have created some confusion (see note 9 *infra*), the Court will again summarize the applicable law in detail.

> (B) demand payment in accordance with the schedule.
>
> (2)(A) No later than 90 days after the employer receives the notice described in paragraph (1), the employer--
>
>> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
>>
>> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
>>
>> (iii) may furnish any additional relevant information to the plan sponsor.
>
> (B) After a reasonable review of any matter raised, the plan sponsor shall notify the employer of--
>
>> (i) the plan sponsor's decision,
>>
>> (ii) the basis for the decision, and
>>
>> (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments.

In other words, as soon as practicable after the employer (here, Able) withdraws, the plan sponsor (here, the Trustees), must provide the employer with notice of withdrawal liability. 29 U.S.C. § 1399(b)(1)(A)-(B). After receiving notice of withdrawal liability, the employer has 90 days in which it may request review, identify inaccuracies, or provide additional information. 29 U.S.C. § 1399(b)(2)(A). In the event that the employer timely seeks review or raises a challenge under § 1399(b)(2)(A), the plan sponsor must conduct a reasonable review and notify the employer of its decision and rational. 29 U.S.C. § 1399(b)(2)(B).

Following the procedure described in § 1399, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination [of withdrawal liability] **shall** be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added). The procedures for initiating arbitration proceedings are set forth at 29 U.S.C. § 1401(a)(1), which states, in pertinent part, as follows:

3

      (a) Arbitration proceedings; matters subject to arbitration, procedures applicable, etc.

           (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of--

                (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or

                (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

           The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

Pursuant to § 1401(a)(1), the deadline for initiating arbitration can be triggered in three ways:  (1) within 60 days of the date the plan sponsor responds to an employer's request for review of a withdrawal liability notice; (2) within 180 days of the date the employer requests review of a withdrawal liability notice; or (3) within 180 days of the date the plan sponsor first notifies the employer of withdrawal liability, _if_ the parties jointly initiate arbitration.  Notably, none of these methods of invoking arbitration contemplates a party _unilaterally_ initiating arbitration in the absence of a request for review of withdrawal liability by the employer under § 1399(b)(2)(A).  The third option is not tied to a request for review, but it requires the parties to initiate arbitration _jointly_.

      Consequently, for purposes of this motion for judgment on the pleadings, § 1401(b)(1) is the operative provision because Able has admitted that it withdrew from a collective bargaining agreement governed by ERISA and MPPAA.  Section 1401(b)(1) states:

      (b) Alternative collection proceedings; civil action subsequent to arbitration award; conduct of arbitration proceedings

           (1) **If no arbitration proceeding has been initiated** pursuant to subsection (a) of this section, **the amounts demanded by the plan sponsor** under section 1399(b)(1) of this title **shall be due and owing on the schedule set forth by the plan sponsor**. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

4

29 U.S.C. § 1401(b)(1) (emphasis added).  *See also Mason and Dixon Tank Lines*, 852 F.2d at 160

(noting that failure to initiate arbitration within the statutory period for doing so essentially results

in default pursuant to § 1401(b)(1):  "If no arbitration proceeding has been initiated . . . the amounts

demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan

sponsor.").  Together, sections 1399 and 1401 require the employer to either initiate arbitration as

described in the statute or pay the withdrawal liability as set forth in the notice.

### B.    The Complaint and Answer & Counterclaim

On August 11, 2006, the Trustees filed a *Complaint* against Able alleging that, pursuant to

ERISA and MPPAA, Able had failed to make timely payments of its withdrawal liability.  (ECF

Doc. 1.)  On September 5, 2006, Able filed an *Answer and Counterclaim* (ECF Doc. 7), largely

denying the allegations in the Trustees' *Complaint*, but admitting several facts pertinent to the

motion for judgment on the pleadings.

- Able admitted that it was a party to the collective bargaining agreement (*Counterclaim* at ¶ 3).
- Able admitted that it terminated the collective bargaining agreement with Local 310 (*Counterclaim* at ¶ 4).
- Able admitted that its President received notice from the Fund on April 26, 2006, that it owed withdrawal liability in the amount of $228,546.00 pursuant to 29 U.S.C. § 1399(b)(1). The notice demanded a payment in the amount of $5,383 within 60 days. (*Counterclaim* at ¶7).

### C.    Demand for Arbitration & Motion to Stay Arbitration

On September 21, 2006, Able filed a demand for arbitration with the American Arbitration

Association, citing 29 U.S.C. § 1401(a)(1).  In response, the Trustees filed a motion to stay

arbitration (ECF Doc. 11) on the grounds that Able's request was untimely.  This Court issued an

Order granting the Trustees' motion to stay arbitration on October 23, 2006.[3]  (ECF Doc. 14.)  In its

October 23rd Order, the Court summarized the statutory framework applicable to withdrawal liability

and held that Able's request for arbitration was untimely.  Accordingly, the Court stayed Able's

request for arbitration.  (*Id*.)

Able appealed the Court's October 23rd Order, and the Sixth Circuit dismissed the appeal

for lack of jurisdiction on February 6, 2007.  (*See* ECF Doc. 20.)

**D.      Dismissal of Able's Counterclaim**

On September 25, 2006, the Trustees filed a motion to dismiss all four counts of Able's

counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]  (ECF Doc. 9.)  The

Court granted the Trustees' motion on August 1, 2007, thus dismissing Able's counterclaim.  (ECF

---

[3]          In its October 23rd Order, the Court summarized the facts as follows:

> On April 26, 2006, Plaintiffs sent Able notice, pursuant to 29
> U.S.C. § 1399(b)(1), that Able's withdrawal liability was
> $228,546, that Able should make the payment in eighty (80)
> installments of $5,383 each, and that the first payment was due
> within sixty (60) days of the date of the letter, making the first
> payment due on June 26, 2006.  Able does not deny that it received
> the notice.  Rather than either making the first payment within sixty
> days or exercising its rights under the MPPAA to seek review of
> the determination of its liability amount within ninety days, Able
> did nothing.  On August 11, 2006, over ninety days after sending
> their notice, Plaintiff filed a complaint in this Court seeking to
> collect the withdrawal liability amount from Able.  Two weeks
> later, Able sent Plaintiffs a letter acknowledging that it received the
> notice and attaching a check for the first payment, made under
> protest.  Able also demanded in its letter that it be provided with all
> the information upon which Plaintiff determined Able's withdrawal
> liability.  On September 5, 2006, Able filed an answer and
> counterclaim seeking a declaration that Able was not liable for the
> withdrawal liability.  On September 21, 2006, Able filed a demand
> for arbitration with the AAA.

(ECF Doc. 14 at 3-4.)

[4]          On the same day, the Trustees filed a motion to transfer this case from the docket of Judge
Solomon Oliver to the undersigned as related to Case No. 04cv2294.  The motion was granted
September 26, 2006.

6

Doc. 21.)  The Court held that, under the applicable ERISA and MPPAA provisions, Able had waived the first two counts raised in its counterclaim by failing to initiate timely arbitration.  The Court also held that the remaining counts raised in Able's counterclaim failed to state a claim upon which relief can be granted.  (*Id*. at 4.)

With respect to the first two counts, the Court rejected Able's argument that its claims were not subject to arbitration.[5]  After <u>thoroughly</u> analyzing the arguments and authority applicable to Count One, the Court held that the question of whether Able was an employer was subject to arbitration.  Consequently, the Court held that Able had waived its right to argue that it was not an "employer" for purposes of withdrawal liability.[6]  (*Id*. at 7-13.)  Similarly, the Court carefully considered Able's second count, in which Able claimed that it is exempt from withdrawal liability under ERISA's building and construction industry exception.  The Court held that the claim was also subject to arbitration and, therefore, had been waived.  (*Id*. at 13-14.)

Count Three of Able's counterclaims alleged that the Fund is barred from seeking to collect withdrawal liability because it failed to comply with ERISA's notice requirements.  First, the Court noted that it had already addressed this argument in the October 23rd Order granting the Trustees' motion to stay arbitration.  (*Id*. at 14-15.)  Second, the Court rejected the claim on its merits after <u>thoroughly</u> analyzing Able's arguments.  (*Id*. at 15-18.) The Court held that:

> the claim asserted in Count Three of Able's Counterclaim is based on requirements that are simply not present in the relevant sections of the MPPAA.  Plaintiff's notice complied with the basic requirements set forth in 29 U.S.C. § 1399(b)(1), and there is no dispute that Able received the notice.  Accordingly, Count Three fails to state a claim on which relief can be granted.

---

[5]    Able did not dispute that it had waived all claims subject to arbitration.

[6]    "Able's claim in Count One is a claim that Able was required to raise in arbitration.  Having failed to timely initiate arbitration, Able has waived that claim, and it must be dismissed."  (ECF Doc. 21 at 10.)

(*Id*. at 18.)

Count Four of Able's counterclaims alleged that the Trustees are barred from seeking withdrawal liability because the Fund failed to provide information requested by Able pursuant to 29 U.S.C. § 1401(e).  (*Id*. at 19.)  The Court held that Count Four failed to state a claim because the request for information on which Able based the claim occurred well after the statutory deadline for such requests.  (*Id*. at 20-21.)

Accordingly, the Court dismissed Able's counterclaim in its entirety.

### E.      The Trustees' Motion for Judgment on the Pleadings

On February 8, 2008, the Trustees filed the Rule 12(c) motion presently before the Court. (ECF Doc. 22.)  The Trustees argue that, based on Able's admissions in its *Answer and Counterclaim*, and the Court's Orders summarized above, all of the issues raised in the Complaint have now been resolved and judgment on the pleadings is appropriate.  Specifically, the Trustees argue that 29 U.S.C. § 1401(b)(1) governs because Able failed to timely initiate arbitration.  As noted above, § 1401(b)(1) states:

> If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor.  The plan sponsor may bring an action in a State or Federal court of competent jurisdiction.

The Trustees argue that all of the elements of their Complaint for withdrawal liability have been established because the Court has already determined that Able admitted that it was notified of its withdrawal liability after withdrawing from the collective bargaining agreement and, by failing to timely initiate arbitration, waived its right to argue that it is not an employer for purposes of the MPPAA.  The Trustees also request interest, liquidated damages, attorneys' fees, and costs under 29 U.S.C. § 1451(b).  (ECF Doc. 22 at 12-17.)

8

Able's primary argument in its response in opposition to judgment on the pleadings is that the Court should <u>reconsider</u> its determination that Able did not timely initiate arbitration. (ECF Doc. 23 at 2.) Able argues that the MPPAA simply does not establish a deadline for initiating arbitration when the employer does not seek review of the plan sponsor's notice of withdrawal liability. (*Id.*) Therefore, because Able did not seek such review, it contends that it had an indefinite period in which to initiate arbitration, and did so within a reasonable time. Additionally, Able argues that judgment on the pleadings is precluded by its counterclaims and affirmative defenses, in which it denies that it is an "employer" subject to withdrawal liability. Able also contends that, even if the Trustees prevail, an award of interest, liquidated damages, attorneys' fees, and costs is <u>not</u> mandatory in this case and the Court should exercise its discretion to refuse to award such damages. (ECF Doc. 23 at 12-14.)

## II.    DISCUSSION

### A.    Standard of Review

The standard of review applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim is also applicable to a Rule 12(c) motion for judgment on the pleadings. *JP Morgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a

9

matter of law.'" *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991)).

### B.    Analysis

The question before the Court with respect to this motion for judgment on the pleadings is whether Able is liable for the current amount of unpaid withdrawal liability under § 1401(b)(1)[7] based on the *Complaint*, *Answer and Counterclaim*, and the Court's prior rulings.

The elements of § 1401(b)(1) are:  (1) Able is an employer subject to the statute governing withdrawal liability; (2) the Fund complied with the statute in asserting its claim for withdrawal liability; and (3) Able failed to timely initiate arbitration.  *See generally Bd. of Trustees of Trucking Employees of North Jersey Welfare Fund v. Canny*, 900 F. Supp. 583, 592 (N.D. N.Y. 1995) (listing the elements of a § 1401(b)(1) claim as MPPAA employer status; receipt of notice of withdrawal liability; and failure to initiate timely arbitration proceedings).

The Trustees can satisfy these elements and, consequently, are entitled to judgment on the pleadings.  Able admitted the second element of withdrawal liability under § 1401(b)(1), and all three elements of the Trustees' § 1401(b)(1) claim have already been decided in favor of the Trustees in this Court's prior Orders.

### 1.    This Court Has Already Determined that Able's Request for Arbitration Was Untimely

Able's devotes most of its brief in opposition to judgment on the pleadings to the argument that the Court should <u>reconsider</u> its ruling on the motion to stay arbitration.  Ironically, this argument

---

[7]     Able does not dispute that withdrawal liability generally is the issue in this case because it admits that it was a party to the collective bargaining agreement and withdrew on February 2, 2005. (ECF Doc. 7.)

is itself clearly untimely and procedurally improper.  Even if the Court considered the argument

under the standard for a motion to reconsider or *de novo*, however, it still fails.

### i.    Able's Improper Motion for Reconsideration

In granting the Trustees' motion to stay arbitration, the Court rejected Able's arguments that

it had timely initiated arbitration proceedings.[8]  Specifically, the Court rejected:  (1) the notion that

the MPPAA required the Trustees to request information from Able prior to determining withdrawal

liability; (2) the argument that the Trustees' notice was fatally flawed because it did not inform Able

of its right to request review of withdrawal liability; and (3) the argument that the MPPAA required

the Trustees to give Able notice of its failure to make the first payment prior to filing this case.  (ECF

Doc. 14 at 4-5.)  Able is now arguing that the deadline for initiating arbitration is indefinite when

the employer does not request review by the plan sponsors (*i.e.*, the Trustees) under 29 U.S.C. §

1399(b)(2)(A) prior to initiating arbitration.

To the extent that it challenges the Court's Order granting the Trustees' motion to stay

arbitration holding that Able's request for arbitration was untimely, Able's response to the motion

for judgment on the pleadings is actually a motion for reconsideration.  As a general rule, a party

must assert all of its arguments at its first opportunity, and cannot use a motion for reconsideration

as a substitute for an appeal or to raise arguments that could have been raised initially.  *See*, *e.g.*,

*Ohio and Vicinity Regional Council of Carpenters v. Complete General Construction Co.*, No.

3:04cv7234, 2005 WL 1244966, at *1 (N.D. Ohio May 20, 2005) (stating that a motion for

reconsideration is "not an opportunity for an unhappy litigant to reargue the case," "a substitute for

---

[8]      In fact, the Court described Able's position as "a series of uncompelling arguments based on
misrepresentations (and, frankly, mischaracterizations) of the relevant statutes."  (ECF Doc.
14 at 4.)  The Court also noted that the same arguments had inspired a motion for sanctions
filed by the Trustees against Able in a related matter, Case No. 1:04cv2294.  (*Id.*)

11

appeal[,] nor . . . [a] vehicle[ ] whereby a party may present arguments inexplicably omitted in prior proceedings") (citing *McDowell v. Dynamics Corp. of America*, 931 F.2d 380, 382 (6th Cir. 1991); *see also generally Roger Miller, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).  There is no reason Able could not have raised its new statutory interpretation argument in its briefs in connection with the motion to stay arbitration.  The Court would therefore be justified in simply refusing to consider this argument.

Furthermore, motions to reconsider are only granted in a narrow range of circumstances.  A motion to reconsider may be granted in light of:  (1) an intervening change in controlling law; (2) discovery of new evidence; or (3) a manifest injustice or clear error.  *Ohio and Vicinity Regional Council of Carpenters*, 2005 WL 1244966 at *1.  Able does not argue that the law has changed or that it has discovered new evidence, and review of the Court's prior Orders and Able's briefs confirms that the Court's ruling regarding waiver of arbitration was not a manifest injustice or clear error.[9]  Accordingly, the Court will not reconsider its ruling finding that Able failed to timely initiate arbitration proceedings.

ii.     **Able's New Argument Fails:  Able Did Not Timely Initiate Arbitration Proceedings**

Even if the Court considers Able's new statutory interpretation argument, it fails on its merits.  Briefly, Able's theory creates an indefinite right to demand arbitration.  Able contends that, because the statute does not explicitly state that an employer's failure to seek timely review of the

---

[9]     The Court acknowledges that the deadline for initiating arbitration is not tied to the date of the plan sponsor's initial notice of withdrawal liability, unless the parties jointly initiate arbitration proceedings.  *See* 29 U.S.C. § 1401(a)(1).  To the extent the Court suggested otherwise in its Order granting the motion to dismiss Able's counterclaims, it misspoke.  (*See* ECF Doc. 21 at 5.)  No prejudice resulted from the Court's misstatement, however.  As explained in both this Order and the Court's earlier Order granting the Trustees' motion to stay arbitration (ECF Doc. 14), Able's request for arbitration was untimely because it did not seek timely review of the withdrawal liability notice and did not initiate arbitration proceedings jointly.

initial notice of withdrawal liability precludes unilateral initiation of arbitration, an employer who never seeks review can initiate arbitration at any time.  At best, and in isolation, Able has identified a small gap in the language of the statute.  More accurately, its argument is illogical and inconsistent with the MPPAA's goal of prompt resolution of withdrawal liability disputes.  *See Mason and Dixon Tank Lines, Inc.*, 852 F.2d at 164.  Furthermore, at least one Court has expressly rejected Able's theory, and no court has actually adopted it.  *See Central States, Southeast and Southwest Areas Pension Fund v. St. Louis Post Dispatch, LLC*, 2007 WL 2492084 (N.D. Ill. 2007).

Accordingly, Able did not timely initiate arbitration proceedings and one element of withdrawal liability pursuant to § 1401(b)(1) is satisfied.

### 2.    This Court Has Already Determined that Able Waived Its Right to Argue that It Is Not an MPPAA "Employer"

In its Order dismissing Able's counterclaim, the Court held that Able had waived its right to argue that it was not an employer by failing to timely initiate arbitration.  (ECF Doc. 21 at 7-13.) That decision controls here.  While Able argues that it denied "employer" status in its pleadings, in this case, that fact is of no moment.  As explained in this Court's Order of August 1, 2007, by the time the pleadings in this case were filed, Able had long since waived its right to deny its status as an employer under the collective bargaining agreements to which it was a signatory for over eight years.  The Court incorporates its discussion of that issue here.  (*See Id*. at 7-18.)

Accordingly, Able is deemed an MPPAA "employer"[10] for purposes of this litigation.  Two of the three elements of § 1401(b)(1) are satisfied.

---

[10]    As the Court noted in its Order dismissing Able's counterclaim, it need not address the parties' other arguments regarding whether or not Able is an MPPAA "employer."  (ECF Doc. 21 at n.4.)  As it did in its earlier Order, however, the Court notes that the Trustees present other compelling arguments in support of their position, while Able's arguments are inapposite.

**3.     It Is Undisputed that Able Received Notice of Withdrawal Liability**

Able admitted in its *Counterclaim* that it received notice of withdrawal liability from the Trustees.  (*Counterclaim* at ¶ 7.)  The Court, moreover, held in its Order dismissing Count Three of Able's counterclaim that the notice of withdrawal liability the Trustees provided was sufficient. (ECF Doc. 21 at 18.)  Furthermore, based on the facts recounted above, the Trustees complied with all of the applicable requirements of the statutory scheme for collecting withdrawal liability, which is set forth in pertinent part above.  *See* 29 U.S.C. §§ 1399 and 1401.

Accordingly, the Trustees have satisfied all of the elements of § 1401(b)(1) and the motion for judgment on the pleadings is **GRANTED**.

## III.    THE TRUSTEES' REQUEST FOR INTEREST, LIQUIDATED DAMAGES, ATTORNEYS' FEES AND COSTS

The Trustees request an award of interest, liquidated damages, attorneys' fees, and costs associated with this action.  They argue that 29 U.S.C. § 1451(b) mandates such an award.  Section 1451(b) provides:

> In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).

29 U.S.C. § 1451(b).  A plan sponsor is automatically entitled to interest, liquidated damages, attorneys' fees, and costs in a delinquent contribution case.  29 U.S.C. § 1132(g)(2).[11]  Therefore,

---

[11] Section 1132(g) provides:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions
>      (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
>      (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor

14

the Trustees argue that, because § 1451(b) states that failures to pay withdrawal liability should be treated in the same manner as delinquent contributions, interest and fees are mandatory under § 1451(b).

Able argues that the Trustees' reliance on § 1451(b) is misplaced and that the applicable provision is 29 U.S.C. § 1451(e).  Section 1451(e) makes an award of interest, fees, and costs <u>discretionary</u>.

> In any action under this section, the court **may** award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party.

29 U.S.C. § 1451(e) (emphasis added). Able argues that, because § 1451 applies to withdrawal liability and § 1145 applies to delinquent *contributions*, the applicable provision governing fees in withdrawal liability actions is § 1451(e), not § 1451(b).

These sub-sections appear to overlap, and it is unclear which governs in cases such as this one.  *See Jefferson Tile Co., Inc. v. The Colorado Tile, Marble and Terrazzo Workers Health, Welfare and Pension Funds, Nos. 6 and 85, Trustees*, 797 F. Supp. 857, 860 (D. Colo. 1992) (discussing the "tension" between §§ 1451(b) and 1451(e)). The Sixth Circuit has not addressed this

---

of the plan is awarded, the court shall award the plan--
    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of--
        (i) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in
        an amount not in excess of 20 percent (or such higher
        percentage as may be permitted under Federal or
        State law) of the amount determined by the court
        under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid by the
    defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

issue.  Four other circuits have sided with the Trustees' position that fees are mandatory in both delinquent contribution and withdrawal liability cases in which the plan sponsor prevails, however. *Id*. at 861.  The Courts finding an award of fees mandatory in such cases have essentially reasoned that the language in § 1451(b) stating that "any failure of the employer to make any withdrawal liability payment . . . shall be treated in the same manner as a delinquent contribution" is sufficiently unequivocal to trump any inconsistent language in § 1451(e).  *See id*. (citing *Central States, Southeast and Southwest Areas Pension Fund v. Hayes*, 789 F. Supp. 1430, 1437 (N.D. Ill. 1992).[12]

---

[12]            The court in *Jefferson Tile*, 797 F. Supp. 860-61,analyzed this question in some detail, as follows:

> Jefferson Tile's central argument with respect to the request for damages in the Withdrawal Liability Action is that an award is discretionary, not mandatory. Jefferson Tile relies on *Malden Mills Industries v. ILGWU National Retirement Fund*, 766 F.Supp. 1202 (D.Mass.1991), in which the court granted a fund's request for attorney fees with respect to its delinquent contribution claim, but denied the request as to a withdrawal liability claim. The court held that, while an award of attorney fees was mandatory in a delinquent contribution action in which a plan prevails under § 1132(g)(2), it was discretionary in a withdrawal liability action under § 1451(e). The reasoning in *Malden Mills* is curious.
>
> Two ERISA provisions relating to civil actions for withdrawal liability are relevant. First, § 1451(b) provides that "[i]n any action under this section to compel an employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title.)" 29 U.S.C. § 1451(b). Thus, treating a plan's claim for withdrawal liability in the same manner as one for delinquent contributions, an award of statutory damages, including attorney fees, is mandatory. See 29 U.S.C. § 1132(g)(2). Second, § 1451(e) provides: "In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." *Id*. § 1451(e).
>
> In *Rootberg v. Central States, Southeast & Southwest Areas Pension Fund*, the Seventh Circuit explained the apparent tension between these two sections:
>
> The MPPAA authorizes an employer adversely affected by an act or omission with respect to a multiemployer plan to bring suit in federal court for appropriate legal or equitable relief. And in any such suit "the court may award all or a portion of the costs and expenses incurred in connection with [the suit], including reasonable attorney's fees, to the prevailing party." This section has no legislative history except for a statement by the floor manager of the bill in the House of Representatives, Congressman Thompson, that if an employer fails to make timely withdrawal-liability payments required by the MPPAA "the court must award the plan ... attorneys' fees." This language seems overemphatic in view of what section 1451(e) actually says ("the court *may* award all or *a portion*

It seems that 29 U.S.C. § 1451 is poorly drafted and internally inconsistent.  Since the Sixth Circuit has not decided this issue, however, and the majority view is the one which is most consistent with the remedial purpose of the MPPAA, the Court adopts the majority position and holds that the Trustees are entitled to an award of interest, liquidated damages, attorneys' fees and costs as a matter of law, and this Court does not have the discretion to reject the Trustees' request for such payments.

Even if such an award were not mandatory, moreover, the Court would find it appropriate under the discretionary standard of § 1451(e).  The Sixth Circuit uses a five-factor test to determine whether a discretionary award of fees is appropriate:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006); *see also Central States, Southeast*

---

of the costs and expenses incurred"), but in any event does not address the case where the *employer* is the prevailing party. There are few reported cases under this section; but since the MPPAA is an amendment to ERISA (the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.), which has a similarly worded provision on attorney's fees (In any suit under ERISA "by a participant, beneficiary, or fiduciary ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1))-and such differences in wording between the two provisions as there are appear to be inadvertent-we hold the standards for awarding attorney's fees are the same.

856 F.2d 796, 799 (7th Cir.1988) (final emphasis added).

Thus, the court's discretion to award attorney fees under § 1451(e), like § 1132(g)(1), applies to all actions brought under that section, *except* one in which a plan prevails in compelling an employer to pay withdrawal liability. In the latter case, like in delinquent contribution actions in which there is a judgment in favor of a plan under § 1132(g)(2), attorney fees and other statutory damages are mandatory. *See, e.g., Central States Pension Fund v. Hayes*, 789 F.Supp. 1430, 1437 (N.D.Ill.1992) (citing cases from the Second, Third, Fifth, and Ninth Circuits). Therefore, contrary to Jefferson Tile's suggestion, I do not have discretion to award only the amount of interest, liquidated damages, costs and reasonable attorney fees I believe is equitable.

17

*and Southwest Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 767 (6th Cir. 1987).  No single factor is determinative; "they are considerations representing a flexible approach."  *Moon*, 461 F.3d at 643.

With respect to the first factor, the untenable positions Able advanced in its opposition to the motion to stay arbitration (*see* ECF Doc. 14 at n.1), as well as its improper attempt to re-argue that issue in connection with this motion, weigh in favor of a finding of bad faith.  For the same reasons, the fifth factor favors the Trustees.  To the extent that Able's arguments in this case were, at least to some degree, an attempt to thwart the efficiency purpose of the MPPAA, an award of fees will act as a deterrent to similarly situated employers.  With respect to the fourth factor, the Court has no reason to doubt that the Trustees are seeking to confer a common benefit, and this decision will lend support to the line of authority upholding the MPPAA's emphasis on prompt arbitration of withdrawal liability disputes.  The Court does not have sufficient information to evaluate the second factor.  On balance, the factors favor a discretionary award of interest, liquidated damages, attorneys' fees, and costs.  The Trustees' request for interest, liquidated damages, attorneys' fees, and costs is therefore **GRANTED**.

Lastly, the Trustees request an award of attorneys' fees in connection with the appeal filed by Able in this case.  The Sixth Circuit dismissed the appeal for lack of jurisdiction.  (*See* ECF Doc. 20.)  Able does not oppose this request.  Furthermore, the Sixth Circuit has held that such an award in favor of a plan sponsor is appropriate in an ERISA action.  *See Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1404 (6th Cir. 1995).[13]

---

[13]    This Court has jurisdiction to award attorneys' fees in connection with the unsuccessful appeal now that Local 310 has established that Able violated ERISA.  *See Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.*, 992 F. Supp. 980, 982-83 (N.D. Ill. 1998) (holding that the district court may award attorneys' fees for appeal in an ERISA case if plaintiff later prevails on the merits).

Accordingly, the Trustees' request for attorneys' fees in connection with the appeal in this case is **GRANTED**.

**Within ten (10) days of the date of this Order, counsel for Local 310 shall file a motion requesting a specific dollar amount reflecting interest, liquidated damages, attorneys' fees, and costs incurred in connection with this case and the appeal filed by Able.**  The motion shall set forth the basis of the requested award.  Supporting materials related to attorneys' fees and costs should <u>not</u> be filed, but should be attached to a letter sent directly to the Court <u>and</u> to opposing counsel.  Able shall have ten (10) days from the date of receipt of the letter to respond to the motion and the letter.  Any response by Able shall be by letter sent directly to the Court <u>and</u> opposing counsel.  Upon receipt and consideration of Local 310's motion and supporting materials, and any response by Able, the Court will determine the appropriate amount of the award and issue a separate Order reflecting its determinations.

## IV.    CONCLUSION

For the foregoing reasons,  Plaintiff Trustees of the Building Laborers' Local 310 Pension Fund's *Motion for Judgment on the Pleadings* (ECF Doc. 22) is **GRANTED**.  Further, the Trustees' requests for interest, liquidated damages, attorneys' fees, and costs associated with this action, as well as attorneys' fees in connection with the appeal in this case, are **GRANTED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
_____
**KATHLEEN McDONALD O'MALLEY**
Dated: August 19, 2008                        **UNITED STATES DISTRICT JUDGE**

19